# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DRAKEN GROUP, INC., successor-in-interest to BLUE LION VENTURES, LIMITED; THE DRAKEN FINANCIAL GROUP, LLC; EQUITY PLANNING SECURITIES CORPORATION d/b/a THE DRAKEN GROUP, INC.; and, THE DRAKEN GROUP, INC., <br><br>　　　　　Plaintiffs, <br><br>vs. <br><br>AVONDALE RESOURCES CORPORATION, <br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 06-CV-595-SAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Comes on for determination Plaintiff's reinstated Motion for Summary Judgment [Dkt. #88][1] on the issue of enforceability of the clause in the contract at issue herein ("Contract") which would entitle Defendant to elect, at its discretion, to pay Plaintiff the acquisition fee set forth in the Contract by providing a five percent working interest in the acquired oil and gas fields in lieu of cash. The Court ordered supplemental briefing on the issue on August 23, 2007.[2] Hearing was held on November 20, 2007. Having considered

---

[1] Dkt. #88 was filed when there was only one named Plaintiff. Additional Plaintiffs were allowed to join thereafter. There is currently pending a contested motion to dismiss the additional Plaintiffs. The Court will refer to the Plaintiff in the singular as that was the designation used in the initial motions for summary judgment unless referring to a pleading as filed.

[2] An Order was entered on August 23, 2007 which resolved Defendant's Motion for Summary Judgment [Dkt. # 85] and Plaintiff's Motion for Summary Judgment [Dkr. # 88] except as to this issue, raised *sua sponte* by the Court.

the submissions and arguments of counsel, the Court finds as follows:

## STATEMENT OF FACTS

In the August 23, 2007 Order, [Dkt. # 129], the Court directed Defendant to produce an affidavit detailing the enforceability of the oil and gas leases acquired by Defendant Avondale. Defendant submitted the affidavit of Tom McCord, President of Avondale [Dkt. # 130]. There is a further detailed description of the individual leases at issue in Plaintiffs' Supplemental Brief [Dkt. #140].[3]

All of the leases at issue appear to fall within one of the following categories:[4]

1. Leases acquired during the contract term that are active and enforceable;

2. Leases acquired during the contract term that expired due to no production or payment of delay rentals;

3. Leases that were unenforceable because they expired before the lease was assigned;

4. Leases that were unenforceable because of a clouded title;

5. Leases that were never actually received and paid for by Defendant, some of which may have been assigned back to the seller; and,

6. Leases acquired during the contract term which have been sold, transferred and assigned to third parties by Avondale for consideration.

## DISCUSSION

The November 15, 2005 Contract contains the following provision:

---

[3] See footnote 1.

[4] There are evidentiary disputes concerning the categorization of some leases.

> 2. <u>Fees</u>.  The Company agrees to pay Blue Lion for its services as follows:
>
> (a)  Upon consummation of an Acquisition, an acquisition fee ("Acquisition Fee") equal to 5.0% of the total Consideration (as hereinafter defined).  At the discretion of Avondale, this fee may be paid in cash or, in whole or in part, in the equivalent percentage of working interests in acquired oil & gas fields.[5]

Defendant argues and Plaintiff does not dispute that Mr. Heyn ("Heyn"), one of Plaintiff's principals, drafted and submitted the original version of the Contract to Avondale.  Heyn's affidavit says it is "a typical form of exclusive investment banking agreement and has been commonly used in the investment banking industry for at least  ten years."  Plaintiff drafted and bargained for this language, which describes the fee to be received for Plaintiff's services and for which Plaintiff is suing in this lawsuit.  The Court finds that the provision is fully enforceable including the provision that, at the discretion of Avondale, the fee may be paid in cash **or, in whole or in part, in the equivalent percentage of working interests in acquired oil & gas fields.**  (Emphasis added).  At no time has the Plaintiff pleaded or argued that the alternative fee provision is unenforceable.  In Plaintiff's Amended Complaint and Second Amended Complaint, the full language of the fee provision has been cited without objection.

This Court is required to apply the exact language of the fee provision for which the parties bargained and to which they agreed unless there are grounds for reformation.  No such grounds have been presented in regard to the fee provision.

> Courts cannot supply material stipulations or read into the contract words or terms it does not contain.  The law will not make a better contract than the parties themselves have seen fit to enter int, or alter it for the benefit of one party to the

---

[5] *See,* Contract, Ex. A

detriment of the other . *King-Stevenson Gas & Oil Co. V. Texam Oil Corp.*, 466 P.2d 950 ( Okl. 1970).

A close examination of the fee provision reveals an "acquisition fee" is to be paid only "upon consummation of an Acquisition." The fee provision says the fee may be paid by the equivalent in percentage of working interests in *acquired* oil & gas fields. [6] Upon consummation of an acquisition, the "acquisition fee" is to be "equal to 5.0% of the total Consideration (as hereinafter defined)." "Consideration" is defined at great length on page 3 of the Contract and is typically described as "the **value** of all cash, securities. . . and any other forms of payment received or to be received . . . by Avondale . . . pursuant to an acquisition . . . ( . . . including capitalized leases) outstanding. . . ." (*Emphasis added).* Thus, once it is determined that the acquisition of an oil and gas lease has been consummated, the value of that oil and gas lease must be determined at the date of consummation and the acquisition fee is 5% of that value. Once the amount of the fee is determined, Avondale has the discretion to pay that amount in cash or by assignment of a working interest in the lease equal to 5% of the value of the lease acquired.

Assignment of a 5% working interest as the acquisition fee would automatically create a fee equal to 5% of the value of the acquisition. To pay the fee in cash would require the determination of the value of the acquisition. Whether the agreed written contract prices for the acquisitions are determinative of the value or only one piece of evidence in regard to the value of the acquisition is an issue that has not yet been determined.

---

[6]Emphasis added.

Having found that the fee provision is fully enforceable, including the discretionary right to assign a 5% working interest, the application of that fee provision to the six categories of lease acquisitions described on page 2 above is not without difficulty. Defendant's position is that there is no fee owing as to any of the lease acquisitions based on other defenses that are beyond the scope of this Order. This Order deals solely with the enforceability of the provision permitting payment by assignment of the 5% working interest. Reserving all of Defendant's remaining defenses for another day, the Court finds the enforceablity of the 5% clause to be as follows:

The clause may be clearly enforced for those leases in group #1–-those leases acquired during the contract term that are active and enforceable. Groups 3, 4 and 5 deal with situations in which the acquisition was incomplete or clouded and should be resolved by jury decision as to whether the "consummation of an acquisition" has occurred. If the jury determines there is no consummation, no fee is owing. If the jury determines there has been a consummation of an acquisition, the 5% interest can be assigned only if defendant still owns the lease.

The more difficult question arises in connection with groups 2 and 6–those leases that have been lost due to failure to pay delay rentals or sold, transferred or assigned. There is no way Defendant can compensate Plaintiff with a 5% working interest in a lease Plaintiff no longer owns. Under contract law, a provision that can no longer be physically performed due to a change in condition is not legally enforceable. Defendants must compensate Plaintiff with the only remaining possible means of compensation set forth in the clause—cash. *See generally*, *Yankton Sioux Tribe of Indians v. United States,* 272 U.S. 351, 358, 47 S.Ct. 142, 71 L.Ed. 294 (1922) (where promises are in the alternative,

5

the fact that one of them. . .becomes impossible of performance does not . . . relieve the promisor from performing the other"), cited in *Crowley v. Commodity Exchange, Inc.* , 141 F.2d 182, 189 (2nd Cir. 1944).

Defendant argues that Plaintiff had an equitable interest in each lease acquired, citing *Youngs v. Case,* 1959 OK 129, 341 P.2d 572, in which the Oklahoma Supreme Court found that an attorney, who entered into a contract which stated his compensation was to be one-half of the profit from the sale of the land, acquired an equitable interest in the land. Defendant then argues that Plaintiff was obligated to protect its equitable interest in leases that have expired from nonpayment of delay rentals by paying or ensuring the delay rentals are paid.  The Court finds that potential assignment of the working interest was one of two possible modes of payment and that any equitable interest held by Plaintiff was too inchoate to obligate or permit Plaintiff to become involved in the preservation of such leases.

The Plaintiff argues that the Defendant lost the right to pay the fee by the assignment of the 5% interest by failure to make such an assignment at the time the leases were acquired or within a reasonable time thereafter and that Defendant lost such rights by defaulting under the Contract.  This argument fails because the Defendant has asserted from the beginning that there is no fee owing to Plaintiff at any time since the leases were acquired.   The Court will not find that the Defendant has lost their contractual right to deliver a 5%  interest simply because they contest Plaintiff's right to any recovery.

## CONCLUSION

The Court finds that the clause permitting the payment of fees by the assignment of a 5% working interest may be enforced as described above.  Motion for Summary

Judgment [Dkt. #88] as to the issue of enforceability of the of the clause in the Contract which would entitle Defendant to elect, at its discretion, to pay Plaintiff the acquisition fee set forth in the Contract by providing a five percent working interest in the acquired oil and gas fields in lieu of cash, is granted in part and denied in part as set forth herein.

IT IS SO ORDERED THIS 14TH DAY OF JANUARY, 2008.

Sam A. Joyner
United States Magistrate Judge